# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

      Plaintiff,      :      Case No. 1:08-cr-069
                                      Also Case No. 1:10-cv-901

                                      Chief Judge Susan J. Dlott
    -vs-                                Magistrate Judge Michael R. Merz
                                 :

CLARENCE NELSON,

      Defendant.

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant's Motion to Vacate, Set Aside, or Correct a Sentence, pursuant to 28 U.S.C. §2255 (Doc. No. 78).

Nelson filed the Motion *pro se*. In the Government's Response, it conceded that Ground One of the Motion stated sufficient verified facts to require an evidentiary hearing (Doc. No. 82). The Court therefore appointed counsel for Nelson (Doc. No. 85) and set an evidentiary hearing (Doc. No. 86). The hearing was conducted on July 12, 2011, and the evidence has been transcribed (Doc. No. 92). Defendant and the United States have filed Briefs directed to the evidence (Doc. Nos. 96, 98) and the Motion to Vacate is now ripe for decision on the merits.

Nelson pleads the following Grounds for Relief:

    **Ground One:** Nelson was denied effective assistance [of counsel].

    **Supporting Facts:** Nelson specifically instructed his attorney to file a notice of appeal before the limitation period has expired. In fact, directly after this Court had advised Nelson of this right. Is Nelson entitled to habeas relief where counsel failed to follow Nelson's expressed instructions?

1

> **Ground Two**: Counsel failed to understand the basic mechanics of the Guidelines, rendering him ineffective.
>
> **Supporting Facts:** Recognizing the Government's position in Case # 68 [1:08-cr-068], Nelson still maintains counsel is ineffective for failure to challenge his prior convictions.
>
> **Ground Three:** The conviction here exceeds the Government's enumerated powers, the Tenth Amendment and is constitutionally vague.
>
> **Supporting Facts:** The S[upreme] C[ourt] will soon decide Bond v. U.S., which Nelson believes will impact this case. Also the drug statutes in this case facilitate opportunistic and arbitrary prosecutions based upon the Government's own predilections.
>
> **Ground Four:** Nelson adopts all argument [sic] in his other § 2255.

(Motion, Doc. No. 78, PageID 183-187.)

## General Standard for § 2255 Motions

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid" *Mallett v. United States*, 334 F. 3d 491, 496-97 (6th Cir. 2003). In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006), citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). To obtain relief under 28 U.S.C. §2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780, 99 S. Ct. 2085, 60 L. Ed. 2d 1634 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence

was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,'" *Davis v. United States*, 417 U.S. 333, 346 (1974), quoting *Hill v. United States*, 368 U.S. 424, 428-429 (1962); see also *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2006). Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process; mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

**Analysis**

**Ground One**

In his first Ground for Relief, Nelson claims he received ineffective assistance of trial counsel when his trial attorney, Kevin Schad, failed to file a notice of appeal despite express instructions to do so.

Nelson's first Ground for Relief states a claim cognizable under 28 U.S.C. § 2255. Failure to file a notice of appeal on request is ineffective assistance without any showing of prejudice. *Ludwig v. United States,* 162 F.3d 456 (6th Cir. 1998); *United States v. Peak*, 992 F.2d 39 (4th Cir. 1993); *United States v. Tajeddini*, 945 F.2d 458 (1st Cir. 1991); *Estes v. United States,* 883 F.2d 645 (8th Cir. 1989); *Lozada v. Deeds*, 964 F.2d 956 (9th Cir. 1992); *Abels v. Kaiser*, 913 F.2d 821 (10th Cir. 1990). The Sixth Circuit also held "We emphasize, of course, that a defendant's actual

"request" is still a crucial element in the Sixth Amendment analysis. The Constitution does not require lawyers to advise their clients of the right to appeal. Rather, the Constitution is only implicated when a defendant actually requests an appeal, and his counsel disregards the request." *Ludwig*, 162 F.3d at 459. In *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), the Court rejected a *per se* rule which would require an attorney to file a notice of appeal regardless of whether the client asks. The Court held counsel must consult with the client about the advantages and disadvantages of taking an appeal when there is reason to think that a rational defendant would want to appeal or this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

The evidentiary hearing in this case focused on the question whether Nelson expressly and unequivocally instructed Mr. Schad to file a notice of appeal. Having considered the evidence, the Magistrate Judge concludes that Nelson has not proved by a preponderance of the evidence that he made such an unequivocal instruction.

It is plain on the record that Chief Judge Dlott formally gave Nelson the advice required by Fed. R. Crim. P. 32 that he had a right to appeal and that she would have the Clerk file a notice of appeal for him if he so requested. It is also clear that he did not make that request on the record. Mr. Schad spoke up and said he would protect Mr. Nelson's rights.

All three witnesses at the evidentiary hearing agree that some exchange on the question of an appeal took place between Messrs. Nelson and Schad as Nelson was being escorted from the courtroom. Mr. Schad's recollection was that Nelson was unhappy with the sentence and asked "Can't I appeal?" to which Schad responded no, but that he would come to the jail to talk to Nelson about what could be done. Nelson's own testimony was that he asked Schad to file a notice of appeal and received the response that it was being filed that day.

The Magistrate Judge credits Mr. Schad's testimony that he received no express instructions to file a notice of appeal for the following reasons:

First of all, Kevin Schad is a very experienced competent criminal defense attorney with substantial experience in federal court. At the evidentiary hearing, he was well aware – indeed, had no hesitation in testifying thoroughly about – the obligation on a criminal defense attorney to file a notice of appeal if instructed to do so. He also testified that there is no particular burden on an attorney to make such a filing – it can be done electronically on a readily-available form. Finally, he was well aware that filing the notice of appeal would not oblige an attorney to represent the appellant in the Court of Appeals, that another attorney could be substituted as a matter of routine. Aware of his professional obligation to do so if instructed and the slight burden involved, it is unlikely that Mr. Schad would have ignored an express instruction.

Secondly, the advice he gave Mr. Nelson in response to his question "Can't I appeal?" was accurate. As Mr. Nelson's counsel concedes (Doc. No. 96, PageID 382), Mr. Schad had negotiated a plea agreement in which Nelson expressly waived his right to appeal except in two circumstances clearly not applicable here. Nelson testified at the evidentiary hearing that he believed he had the right to appeal if he believed the sentence was "unfair." That is not what the Plea Agreement says,[1] and the Magistrate Judge has no doubt the meaning of the actual agreement was fully explained to Mr. Nelson when the Plea Agreement was accepted.[2] Thus Mr. Nelson had not received a sentence he was entitled to appeal.

Third, Schad had negotiated a plea agreement which was very favorable to Nelson in other respects, obtaining the dismissal of other counts of the indictment. Then he vigorously and effectively argued for additional downward adjustments in the sentencing process. Nelson

---

[1] The Plea Agreement (Doc. No. 56) is filed under seal. Accordingly, no direct quotation is made from that document.

[2] Although the plea colloquy has not been transcribed, Mr. Nelson has not made any claim that the nature of the waiver of appellate rights was not explained to him. (See Minute Entry, Doc. No. 55.)

eventually received exactly the sentence contended for in the sentencing memorandum, 144 months confinement. Furthermore that sentence was ordered to be served concurrently with the sentence in 1:08-cr-068. Nelson complains now that he thought the sentence was unfair, and presumably he still thinks so. But he offers no evidence that the sentence is more than he was led to expect, more than is reasonable under the sentencing statutes, or in anyway disproportionate to sentences imposed on other drug traffickers with prior drug trafficking convictions.

In Defendant's Brief, counsel suggests that, even if the Court finds that Defendant's instructions were not unequivocal, relief should still be granted "due to trial counsel's failure to adequately consult with Defendant about his appellate rights." (Brief, Doc. No. 96, PageID 381.) However, that is not the ground for relief that was pled and also not the claim that was tried. There was some testimony about post-sentence consultation, but presumably there would have been much broader testimony on this topic had the Motion been amended prior to the hearing. Finally, Nelson cannot plausibly claim to have been prejudiced by any defect in that discussion as he had a very limited right to appeal which did not include any of the circumstances of his case after sentencing and whatever the discussions were, they had no adverse impact on his ability to seek § 2255 relief. Ground One should be dismissed with prejudice.

**Ground Two**

In Ground Two Mr. Nelson he received ineffective assistance of trial counsel in that Mr. Schad was unfamiliar with the basic mechanics of the Sentencing Guidelines and in particular did not argue at sentencing about his prior convictions. He references the claims he made in this regard in the companion case, 1:08-cr-068.

To the extent Nelson is attempting to incorporate the claims he made in the companion case,

those claims have already been dismissed with prejudice on the Magistrate Judge's Report and Recommendations and over Mr. Nelson's Objections (Case No. 1:08-cr-068: R&R Doc. No. 201; Order Adopting R&R Doc. No. 202.) He has made no better or different argument on this aspect of the claim in this case than he did in the other.

In his Traverse (Doc. No. 84 at PageID 206), he suggests his real argument is that his prior convictions under Ohio law did not constitute drug offenses, rather than the claim he initially made of failure of his counsel in those cases to advise of possible collateral consequences. However, in his Sentencing Memorandum (Doc. No. 68) Defendant conceded that he was properly classified as a career offender and he has not offered any evidence in this proceeding that that concession was not based on a proper evaluation of the prior offenses. In other words, at this point his assertion about the prior offenses is only an assertion.

Ground Two for Relief should also be dismissed with prejudice.

**Ground Three**

In his Third Ground for Relief, Petitioner asserts the conviction in this case exceeds the powers of the Federal Government, in violation of the Tenth Amendment to the United States Constitution and that the statutes under which he was prosecuted are void for vagueness.

While there is no Clause of the United States Constitution which expressly says that Congress has the power to regulate trafficking in controlled substances, the Supreme Court has found that power exists under the Commerce Clause. *See Gonzales v. Raich*, 545 U.S. 1, 17 (2005)(as to intrastate drug activity), citing *Perez v. United States,* 402 U.S. 146, 151 (1971), and *Wickard v. Filburn*, 317 U.S. 111, 128-29 (1942). *See also United States v. Bowers*, 594 F.3d 522 (6th Cir. 2010); *United States v. Chambers*, 441 F.3d 438, 454 (6th Cir. 2006)(Intrastate production

of child pornography is such an activity.) Nelson's Tenth Amendment claim is without merit.

Nelson argues the statutes in question are void for vagueness because they do not make it clear that he had to know that what he was distributing was heroin (in this case; cocaine in 1:08-cr-068). Nelson points to no authority in support of his position and no such authority is known to this Court.

A law may be void for vagueness for two independent reasons. "First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement. *Chicago v. Morales,* 527 U.S. 4 (1999), citing *Kolender v. Lawson,* 461 U.S. 352 (1983).

The United States Supreme Court most recently applied the void for vagueness doctrine in *Morales, supra*. That case repeats what has always been understood to be the law: the void for vagueness doctrine applies only to penal laws, i.e., laws that prohibit conduct under a criminal penalty. In the *Morales* case, the conduct was loitering without apparent purpose after an order to disperse by a Chicago police officer. In *Papachristou v. Jacksonville,* 405 U.S. 156 (1972), it was loitering, pure and simple. In *Kolender*, *supra*, it was loitering without "reliable and credible identification."

> Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement. ... "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits...." *Giaccio v. Pennsylvania,* 382 U.S. 399, 402-403, 86 S. Ct. 518, 15 L. Ed. 2d 447 (1966). ... "No one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939).

*Morales*, 119 S. Ct. 1859-60. As to the second prong, the Court also held "The broad sweep of the

8

[Chicago gang loitering] ordinance also violates "'the requirement that a legislature establish minimal guidelines to govern law enforcement", that is "the moment-to-moment judgment of the policeman on his beat." *Kolender*, 461 U.S. at 358-59.

> There are three related manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. General Constr. Co., 269 U.S. 385, 391, 70 L. Ed. 322, 46 S. Ct. 126 (1926); accord Kolender v. Lawson, 461 U.S. 352, 357, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983); Lanzetta v. New Jersey, 306 U.S. 451, 453, 83 L. Ed. 888, 59 S. Ct. 618 (1939). Second, as a sort of "junior version of the vagueness doctrine," H. Packer, The Limits of the Criminal Sanction 95 (1968), the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. See, e.g., *Liparota v. United States,* 471 U.S. 419, 427, 85 L. Ed. 2d 434, 105 S. Ct. 2084 (1985); *United States v. Bass*, 404 U.S. 336, 347-348, 30 L. Ed. 2d 488, 92 S. Ct. 515 (1971); *McBoyle, supra,* at 27. Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, *see, e.g., Bouie, supra*, 378 U.S. at 357-359; *Kolender, supra*, 461 U.S. at 355-356; *Lanzetta*, supra, 306 U.S. at 455-457; J. Jeffries, Legality, Vagueness, and the Construction of Penal Statutes, 71 Va. L. Rev. 189, 207 (1985), due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope, *see, e.g., Marks v. United States*, 430 U.S. 188, 191-192, 51 L. Ed. 2d 260, 97 S. Ct. 990 (1977); *Rabe v. Washington,* 405 U.S. 313, 31 L. Ed. 2d 258, 92 S. Ct. 993 (1972); *Bouie, supra*, 378 U.S. at 353-354; cf. U.S. Const. Art. I, § 9, cl. 3; id. § 10, cl. 1; *Bouie, supra,* 378 U.S. at 353-354 (Ex Post Facto Clauses bar legislatures from making substantive criminal offenses retroactive). In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal.

*United States v. Lanier*, 520 U.S. 259, 266-267 (1997).

Nelson points to no authority holding a statute void for vagueness because the *scienter* requirement was not "spread" across the various elements of the crime. He does not assert that he did not know what he was selling was heroin, merely that the statute did not require proof of that

9

knowledge. His Third Ground for Relief is completely without merit and should be dismissed with prejudice.

**Fourth Ground for Relief**

In his Fourth Ground for Relief, Nelson merely incorporates by reference the arguments he made in his Motion to Vacate in the companion case. The Court has already rejected all of those arguments.

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that the Motion to Vacate be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Defendant be denied any requested certificate of appealability and leave to appeal *in forma pauperis*.

October 14, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing,

the objecting party shall promptly arrange for the transcription of the record[3], or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

---

[3] Of course, the evidentiary hearing herein has already been transcribed.